1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

11  JOSEPH RAYMOND McCOY,                    )  Case No.: 1:12cv00983 AWI DLB (PC)
                                             )
12              Plaintiff,                   )  FINDINGS AND RECOMMENDATIONS
                                             )  REGARDING DEFENDANTS' MOTION FOR
13       v.                                  )  SUMMARY JUDGMENT FOR FAILURE TO
                                             )  EXHAUST
14  GONZALES, et el.,                        )  (Document 65)
                                             )
15              Defendants.                  )  THIRTY-DAY OBJECTION DEADLINE
                                             )
16                                           )
                                             )  ORDER DISREGARDING PLAINTIFF'S
17                                           )  REQUEST FOR JUDICIAL NOTICE
                                             )  (Document 93)
18                                           )
19  _____

20       Plaintiff Joseph Raymond McCoy ("Plaintiff"), a state prisoner proceeding pro se and in forma

21  pauperis, filed this civil rights action on June 19, 2012.  This action is proceeding on Plaintiff's First

22  Amended Complaint ("FAC") against Defendants Stronach, Gonzales, LeMay, Beltran, Fisher, Snell

23  and Tann for deliberate indifference in violation of the Eighth Amendment.

24       On November 5, 2014, Defendants filed the instant motion for summary judgment based on

25  Plaintiff's failure to exhaust his administrative remedies.[1]  Plaintiff filed his opposition on February

26

27  _____

28  [1] Concurrent with their motion for summary judgment, Defendants provided Plaintiff with the requirements for opposing
    summary judgment.  Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

                                                      1

12, 2015.[2]  On April 7, 2015, Defendants filed their reply, as well as objections to Plaintiff's evidence. The motion is deemed submitted pursuant to Local Rule 230(l).

**A.      PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events at issue occurred.

Plaintiff alleges that on June 11, 2009, Defendant Stronach examined him and determined that he had an infection of his right foot.  Plaintiff alleges that she knowingly overstepped the scope of her LVN license by prescribing him two tubes of anti-fungal cream.  Defendant Stronach also instructed Plaintiff to return to the general population, despite his request to see qualified medical personnel and despite obvious signs of swelling, oozing and difficulty walking.

On June 14, 2009, after following Defendant Stronach's instructions, Plaintiff noticed an increase in swelling, discoloration and drainage, and he had more difficulty walking.  Defendant Stronach again refused to provide Plaintiff with access to specialized medical personnel.

On June 25, 2009, Clark Kelso delegated Defendant Doctor Gonzales and Defendant Stronach to carry out Plaintiff's medical orders.  Plaintiff told Defendants Gonzales and Stronach that while he was trying to shower, the splint on his right leg became contaminated.  Instead of referring him to medical personnel to replace his splint, and despite observing discharge, pain, swelling and difficulty walking, Defendant Gonzales instructed Defendant Stronach to remove the splint and issue an Ace Wrap.  Defendant Stronach instructed Plaintiff to place the Ace Wrap on his own foot and when Plaintiff disagreed, Defendants Gonzales and Stronach ordered Plaintiff to leave the clinic.

On June 30, 2009, Defendant Gonzales interviewed Plaintiff.  When Plaintiff began to explain his dissatisfaction with his medical treatment, Defendant Gonzales told Plaintiff that he would order Defendant Stronach to ensure that staff under her supervision cleaned the wound every two days for one week.  Defendant Gonzales did not send Plaintiff to a specialist or issue protective footwear.

---

[2] Defendants argue that Plaintiff's opposition was untimely.  However, the proof of service indicates that it was placed in the prison mail on February 5, 2015, making it timely.  Defendants also miscalculate the date it was due- three days are added when documents are served by mail.  Fed. R. Civ. Proc. 6(d).

On August 13, 2009, Mr. Kelso delegated Defendants Gonzales and Stronach to comply with orders for Plaintiff's medical treatment.  Defendant Gonzales issued a priority ducat authorizing custody staff to make sure Plaintiff attended his medical appointment.  When custody staff told them that the wheelchair that had been issued to Plaintiff had malfunctioned and he could not make the appointment, Defendants Gonzales and Stronach filed a report charging Plaintiff with a rules violation for destroying state property.  Defendant Gonzales and Dr. Enenmoh had another prisoner retrieve a wheelchair from the clinic and go get Plaintiff.  Plaintiff was accompanied by Defendant LeMay.

When he arrived, Defendants Snell, Gonzales, LeMay and Stronach told Plaintiff that he was being charged with destruction of state property.  When Plaintiff asked for another wheelchair, Defendant Gonzales told Plaintiff that he did not need another one.  He instructed Defendants Stronach and LeMay to issue Plaintiff another inmate's walker.  When Plaintiff refused and told them that both of his feet were now infected and that walking without protective footwear would be dangerous, Defendants Gonzales, Stronach, Snell and LeMay decided to force Plaintiff to remain in the general population without protective footwear.

On August 25, 2009, Plaintiff asked other prisoners to find a wheelchair so that he could go to the medical clinic.  Plaintiff was in severe pain, with excessive swelling, burning and blood in his urine.  When Plaintiff arrived, Defendants Gonzales, Stronach and LeMay asked Plaintiff where he got the wheelchair.  Plaintiff told them he got it from another prisoner and Defendant Gonzales ordered Defendants Stronach and LeMay to confiscate the wheelchair.  Plaintiff tried to disagree, but Defendant Gonzales immediately activated his prison emergency alarm.  Defendants Beltran, Fisher, Snell and Tann responded and Plaintiff told them that he could not walk.  However, Defendants Gonzales, Stronach and LeMay told them to confiscate the borrowed assistive device.  Defendant Gonzales also told Defendants Beltran, Fisher, Snell and Tann to remove Plaintiff from the medical clinic, and they ordered staff to pick Plaintiff up off a bench and place him on another bench outside. Plaintiff was given a walker and told to return to his housing unit.  Plaintiff tried to walk, but the pain caused him to pass out.  When he came to, he felt like he was being carried and noticed that Defendants Gonzales, Stronach and LeMay were standing over him.  Plaintiff passed out again and

when he regained consciousness, he told Defendant Gonzales that he had severe pain in his back, shoulders and head and requested medical assistance.

Instead of referring Plaintiff to a medical expert to provide appropriate treatment, Defendant Gonzales instructed Defendants Stronach, LeMay, Beltran, Snell, Fisher and Tann to again remove Plaintiff from the clinic.  Custody staff was instructed to assist Gonzales, Stronach, and LeMay in removing Plaintiff.  Plaintiff was lowered to the ground from a gurney and rolled to the pavement. While Defendants Stronach, Gonzales, LeMay, Beltran, Snell, Fisher and Tann watched, Plaintiff made attempts to remove himself from the heat of the sun by crawling on his hands and knees back to his assigned housing.

On December 21, 2009, medical specialists at Mercy Hospital diagnosed disseminated coccidiomycosis of the right navicular bone.

**B.    LEGAL STANDARD**

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings.  Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Albino, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

4

1    **C.    APPEALS PROCESS**

2        The California Department of Corrections and Rehabilitation has an administrative grievance

3    system for prisoners to appeal any departmental decision, action, condition, or policy having an

4    adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  In order to satisfy section

5    1997e(a), California state prisoners are required to use this process to exhaust their claims prior to

6    filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney v. Carey, 311

7    F.3d 1198, 1199-1201 (9th Cir. 2002).

8        To exhaust available remedies during the relevant time period, an inmate must proceed through

9    several levels of review, including an informal level.  Cal. Code Regs. tit. 15, § 3084.5.  A final

10    decision from the Director's Level of Review satisfies the exhaustion requirement.

11        Under the regulations in place at the time at issue, Plaintiff was required to "describe the

12    problem and action requested."  Cal. Code Regs. tit. 15, § 3084.2(a)(2008).  "[T]he primary purpose of

13    a grievance is to notify the prison of a problem, and facilitate its resolution."  Griffin v. Arpaio, 557

14    F.3d 1117, 1120 (9th Cir. 2009).  In the absence of greater specificity required by the applicable

15    regulations, a grievance is sufficient "'if it alerts the prison to the nature of the wrong for which

16    redress is sought.'"  Id. (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); see also Sapp v.

17    Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (noting that section 3084.2(a) is subject to Arpaio).  e

18    Director's Level of Review satisfies the exhaustion requirement.

19    **D.    UNDISPUTED FACTS[3]**

20        Plaintiff filed multiple custody and health care appeals from June 12, 2009, to May 13, 2013.

21    Only three appeals (discussed below) were fully exhausted at the Third Level of Review.  Hildreth

22    Decl. ¶ 11; Robinson Decl. ¶ 10; Briggs Decl. ¶ 8.

23        1.    Log No. SATF-B-2329

24        Plaintiff submitted Log No. SATF-B-2329 ("2329") on June 29, 2009.  The appeal, filed as a

25    citizen's complaint, alleges that "on various dates...including...June 29, 2009," Correctional Officers

26    Morales, Bentencourt and Childress failed to assist Plaintiff in obtaining emergency medical care

27

28    ---------------

[3] Undisputed facts that are not relevant to the exhaustion issue have been omitted.

treatment for an injury to his right foot.  Hildreth Decl. ¶ 11, Ex. A.  Defendant Stronach is not

mentioned in the initial appeal.  However, in Plaintiff's request for Second Level Review, Plaintiff

alleges that Defendant Snell conspired with Defendant Stronach to breach doctor-patient

confidentiality.  Hildreth Decl. ¶ 11, Ex. A.

This appeal is not relevant to this action.

2.    Log No. SATF-HC-09000734

In Log Number SATF-HC-09000734 ("09000734"), submitted on June 25, 2009, Plaintiff

alleges that on or about June 23, 2009, Defendant Stronach conspired with Defendant Gonzales to

rescind authorization for the use of his wheelchair.  He alleged that they knew that this decision would

leave "[his] person exposed to conditions injurious to [his] health and a constant danger to [his] life."

The appeal further explains that on June 24, 2009, Plaintiff collapsed on the bathroom floor after being

exposed to hazardous conditions.  Plaintiff also alleges that Defendant Stronach poisoned him and

tried to interfere with his ADA rights.  Plaintiff concludes his appeal by alleging "to date, despite

Stronach and Gonzales' ongoing knowledge of the hazardous conditions, [they] refuse to implement

medical decisions non-injurious or life-threatening."  Hermosillo Decl. ¶ 10, Ex. I.

In his request for Third Level Review, Plaintiff restates the same allegations, but adds an

allegation that Defendants Stronach and Gonzales admitted, in writing, that these allegations were

true, and that they threatened the use of physical force to get Plaintiff to surrender his wheelchair.

Plaintiff also adds an allegation that Defendant Stronach admitted to observing Plaintiff incapacitated

based on "prior information and knowledge" that he initially refused to surrender the wheelchair.

Hermosillo Decl. ¶ 10, Ex. I.

On October 31, 2009, the Third Level of Review screened out Plaintiff's appeal, explaining

that Plaintiff did not attach and copy of the Second Level denial.  Plaintiff was required to resubmit his

appeal package.  Hermosillo Decl. ¶ 10, Ex. I.

Plaintiff resubmitted the appeal, but also attached several other documents that were not

previously submitted.  The new documents mention several incidents, including the August 13 and 25

incidents.  Hermosillo Decl. ¶ 10, Ex. I.  These documents include a request for judicial notice

submitted in a prior state court habeas action.  The request alleges that on August 13, 2009, Defendant

Stronach conspired with others to claim that Plaintiff destroyed state property, at the insistence of

Defendant Snell, by placing a custodial counseling chrono into Plaintiff's central file.  Hermosillo

Decl. ¶ 10, Ex. I.  The request for judicial notice also alleges that on August 25, 2009, Defendant

LeMay conspired with Defendants Stronach, Gonzales, Beltran, Fisher, Tann and others to continue

retaliatory conduct against Plaintiff by charging him with manipulation of staff.  Plaintiff alleges that

the manipulation charged stemmed from his attempts to return a wheelchair that Defendants Stronach,

Fisher and Tann knew had been destroyed on August 13, 2009.  Hermosillo Decl. ¶ 10, Ex. I.

       The appeal was denied at the Third Level of Review on March 9, 2010.  Hermosillo Decl. ¶ 10,

Ex. I.

       3.     <u>Log No. SATF-HC-10001195</u>

       Plaintiff submitted Log No. SATF-HC-10001195 ("10001195") on February 17, 2010.  He

alleged that Dr. Onyeje refused to provide him medical treatment in retaliation for his filing of the

previously mentioned state court habeas action.  Specifically, Plaintiff contends that Dr. Onyeje denied

him neurologic care for chronic inflammation, fibrosis, granulation, paralysis and chronic pain in his

lower extremities.  Hermosillo Decl. ¶10, Ex. O.

       This appeal is not relevant to this action.

**E.**    **DISCUSSION**

       Plaintiff admits, and it is therefore undisputed, that appeals 2329 and 10001195 are not

relevant to the claims in this action.

       According to his FAC, Plaintiff believes that the March 10, 2009, denial

of 09000734 at the Third Level of Review served to exhaust his claims.  ECF No. 17, at 16-17.

       Based on the undisputed evidence, this appeal initially alleged that on June 23, 2009,

Defendants Stronach and Gonzales conspired to rescind Plaintiff's authorization for a wheelchair.

Plaintiff also alleged that "to date, Stronach and Gonzales' ongoing knowledge of the hazardous

conditions, refuse to implement medical decisions non-injurious or life-threatening," has placed

Plaintiff's life in danger.  The appeal, as filed, makes no mention of his claims that Defendant

Stronach (1) overstepped her license by prescribing anti-fungal cream on June 11, 2009; or (2) refused

to provide specialist treatment on June 14, 2009.  Rather, the appeal deals with a conspiracy to deprive Plaintiff of his wheelchair on June 23, 2009.

Similarly, the appeal does not mention anything about Defendants Stronach and Gonzales refusing treatment on June 25, 2015, giving him an Ace bandage to wrap his foot, or ordering him to leave when he disagreed with the treatment.  Nor does it mention his claim that they failed to send him to a specialist or order footwear on June 30, 2009, or any of the events of August 2009.

While the appeal generally suggests that Defendants Stronach and Gonzales are making "life-threatening" decisions, the appeal is specifically about their June 23, 2009, conspiracy to rescind his wheelchair, and would not have put prison officials on notice of a deficient treatment claim.  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  Indeed, Plaintiff's request for review at the subsequent levels, as well as the decisions, confirm that the appeal did not include a general issue with medical treatment.

To the extent that Plaintiff added allegations about the August 2009 events involving all Defendants at the subsequent levels of review, it does not serve to exhaust those claims.  An inmate cannot add new claims to an appeal at different levels of review.  "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," Woodford, 548 U.S. at 83-84.

Defendants have therefore carried their burden of proving that Plaintiff did not exhaust his available remedies.  The burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1172.  To carry this burden, Plaintiff must demonstrate that administrative remedies were "effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" Williams v. Paramo, 775, F.3d 1182, 1191 (9th Cir.2015) (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778, n. 5 (9th Cir. 1996).

In his opposition, Plaintiff alleges that he submitted numerous appeals to the Warden describing many of the events at issue, but he never received responses or appeal log numbers.[4] Specifically, he states that he submitted the following appeals directly to the Warden: (1) a June 17, 2009, appeal describing Plaintiff's June 11 and 14 encounters with Defendant Stronach; (2) three appeals related to the August 13, claims against Defendants Gonzales, Stronach, LeMay and Snell; and (3) an administrative health care appeal and staff complaint describing the events of August 25, 2009, involving Defendants Tann, Snell, Stronach, Gonzales, Beltran, Fisher and LeMay.[5]

Plaintiff states that he submitted each of the above appeals directly to the Warden, as exceptions to the regular appeals process, or "emergency appeals."  He argues that the Warden should have forwarded the appeals directly to the Appeals Coordinator, and that he should have received a response within five working days.  Plaintiff therefore argues that he attempted to comply with the administrative grievance procedure, but staff interfered with his use of the institutional mail system.

To support his claims, Plaintiff attaches numerous proofs of service showing that "legal/confidential" mail was addressed to "Ken Clark, Warden."  The proofs of services are purportedly signed by mailroom staff and a housing officer, and bear a date stamp of the day following execution of the proof of service.  Pl.'s Opp., Ex. A-G.[6]

Plaintiff's argument, however, assumes that it was proper procedure to submit an appeal directly to the Warden.  To demonstrate that administrative remedies were unavailable, an inmate must establish the appeal "would have sufficed to exhaust the claim that he seeks to pursue in federal

---

[4]  This is the first time Plaintiff raises this argument in support of exhaustion.  As noted above, Plaintiff indicated in his FAC that 09000734 exhausted his claims.

[5]  Plaintiff makes no argument related to the June 25 incident against Defendant Stronach and the June 30 incident against Defendants Gonzales and Stronach.

[6]  Defendants object to the proofs of service as unauthenticated and lacking foundation.  Courts generally have a dim view of authentication objections presented in the absence of any indication that the record's authenticity is genuinely in dispute, Chamberlain v. Les Schwab Tire Center of California, Inc., 2012 WL 6020103, at *2 (E.D.Cal. 2012); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1120-21 (E.D.Cal. 2006), and objections to prison records which are clearly what they purport to be are routinely overruled under Rule 901(b)(4), e.g., Thomas v. Quintana, 2014 WL 5419418, at *3 (C.D.Cal. 2014).  Here, Plaintiff has submitted proofs of service that bear a purported signature by mailroom staff and a housing officer.  They also bear a date stamps above the signature of the mailroom official related to the date of execution.  There is no indication that the documents are not authentic, and Defendants' objections are overruled.

court." Sapp, 623 F.3d at 823-824.  In other words, Plaintiff's attempts to exhaustion must have followed the proper procedure.

Considering the facts in the light most favorable to Plaintiff, i.e., that he submitted the above grievances to the Warden but never received a response, Plaintiff has not demonstrated that he followed the proper procedures.  Plaintiff submitted his appeals directly to the Warden, but the governing regulations at the time did not permit appeals to be submitted directly to the warden, even if the appeals were "emergency appeals."  Such appeals were to be submitted to the Appeals Coordinator, who then determines if emergency processing is warranted.  Cal. Code Regs. tit. 15, § 3084.7 (2009).  Plaintiff therefore did not follow the proper procedure and he cannot show that his appeals would have sufficed to exhaust his claims.

Insofar as Plaintiff relies on an April 26, 2010, response to a Request for Interview addressed to the Warden, the document does not transform his submissions into *proper* appeals.  Plaintiff submitted a Request for Interview to the Warden on April 22, 2010, inquiring about "an appeal to the Wardens Office concerning an issue" at CSATF.  Pl.'s Opp., Ex. K.  The request was forwarded to the Appeals Office for response.  In the response, Steven Smith explains that when the Warden's Office receives an appeal via institutional mail, the appeal is forwarded to the Appeals Office.  Mr. Smith explained that the Warden's Office does not have a tracking system to monitor appeals, and the "Warden's Office is not the appropriate destination when mailing appeals."  Plaintiff was instructed to send his Request for Interview to the Appeals Office to inquire about his existing appeals.

Therefore, while the Request for Interview sent to the Warden may have been forwarded to the Appeals Office, it was forwarded for the purpose of explaining to Plaintiff that appeals or Requests for Interviews should not be submitted directly to the Warden.

Plaintiff also submitted a Request for Judicial Notice on April 13, 2015, stating that he discovered "additional evidence" relevant to the issues.  He attaches a June 26, 2009, letter from J. Cordova, relating to Plaintiff's June 18, 2009, letter to the Warden.  The letter, in which Plaintiff complained of his right to access the prison law library, was forwarded to Mr. Cordova for a response. Mr. Cordova discussed Plaintiff's ability to access the law library for a pending court case.  The letter

is irrelevant to the exhaustion issue and Plaintiff's request for judicial notice is therefore

DISREGARDED.

In sum, Plaintiff was required to properly exhaust by complying with the rules and regulations, there was an administrative remedy process available to him of which he was on notice, and his failure to properly exhaust that available process entitles Defendants to judgment for failure to exhaust. Woodford, 548 U.S. at 90-91.

**F.   CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss, filed November 5, 2014, be GRANTED; and

2.      This action be DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to exhaust.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **April 22, 2015**                          /s/ *Dennis L. Beck*
                                        UNITED STATES MAGISTRATE JUDGE

11